ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ2025-063A

| NICOLÁS CARVAJAL ZARABOZO, MARÍA ELBA DÍAZ MARTÍNEZ y la Sociedad de Bienes Gananciales compuesta por ambos<br><br>Apelantes<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA representada por el SECRETARIO DE JUSTICIA HON. DOMINGO EMANUELLI; LUMA ENERGY OF PR representada por su Presidente SR. WAYNE STENSBY; LIBERTY PR Representado por su Presidente y Dueño SR. NAJI KHOURY; CLARO PR representado por el SR. ENRIQUE ORTIZ DE MONTELLANO; FULANO DE TAL; ABC INC. Representado por JOHN DOE; XYZ INSURANCE CO.<br><br>Apelados | TA2026AP00361 | APELACION procedente del Tribunal de Primera Instancia, Sala de **Guaynabo**<br><br>Civil Núm.: **GB2023CV00233**<br><br>Sobre: Negatoria o Cancelación Servidumbre |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece el señor Nicolás Carvajal Zarabozo, la señora María Elba Díaz Martínez y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, matrimonio Carvajal-Díaz o Apelantes) mediante recurso de *Apelación* presentado el 9 de abril de 2026. Nos solicita la revocación de la *Sentencia* dictada el 31 de marzo de 2026, notificada al día siguiente, por el Tribunal de

Primera Instancia, Sala Superior de Guaynabo (TPI).[1] Mediante el referido dictamen, el foro primario declaró Ha Lugar la *Solicitud de Sentencia Sumaria* instada por Luma Energy, Servco LLC (Luma o Apelado).[2]

Por los fundamentos que discutiremos a continuación, confirmamos la *Sentencia* apelada.

## I.

El caso de marras tiene su génesis el 23 de marzo de 2023, cuando el matrimonio Carvajal-Díaz presentó una *Demanda* en contra de Luma, la Autoridad de Energía Eléctrica (AEE), Liberty PR, Puerto Rico Telephone Company h/n/c Claro PR (Claro) y otros, para la cancelación de una servidumbre que grava su propiedad.[3] Los Apelantes informaron que la propiedad que se describe a continuación, se adquirió el 26 de marzo de 2021, mediante una escritura de Compraventa y Solicitud de Anotación de Hogar Seguro:

> ---URBANA: Solar veintiuno (21), manzana uno (1), Urbanización Torrimar, Barrio Pueblo Viejo de Guaynabo, compuesta de OCHOCIENTOS TREINTA Y DOS PUNTO CINCUENTA Y UNO (832.51) metros cuadrados. En lindes por el Norte; con avenida sesenta y cinco (65) de Infantería con treinta y uno punto cincuenta y dos (31.52) metros; por el Sur, con la calle dos (2) en veintidós punto diez (22.10) metros; por el Este, con la calle tres (3) en veintiocho punto doce (28.12) metros y por el Oeste con solar veinte (20) en treinta y dos punto treinta y siete (32.37) metros. Contiene una casa de concreto para una familia.-------------------Consta inscrita al folio sesenta (60) del tomo cuatrocientos (400) de Guaynabo, finca número doce mil doscientos cuarentisiete (12,247), Registro de la Propiedad de Guaynabo.-------------------------------------------------------------------------------------Su número de catastro es: -086-042-673-20-001-.---------------------------------------La propiedad descrita está afecta las siguientes cargas y gravámenes:----------------Por su procedencia: Servidumbre a favor de Autoridad de Acueductos y Alcantarillados, Autoridad de Fuentes Fluviales de Puerto Rico, Municipio de Guaynabo, Estado Libre Asociado de Puerto Rico y a condiciones restrictivas.----Por sí: Libre.----------------------------------------------------------------------------------------------------

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 137.
[2] *Íd.*, Entrada Núm. 125.
[3] *Íd.*, Entrada Núm. 1.

Adujo que, en el 2017, tras el paso del Huracán María las líneas de energía que constituyen esta servidumbre colapsaron. Por tal motivo, Luma instaló unas nuevas líneas de energía en otra zona del mismo predio. Informó que, a pesar del desuso, aún se mantienen escombros corroídos en la propiedad. De modo que, al cesar el propósito y la utilidad de la servidumbre, procede la cancelación del Registro de la Propiedad.

Tras culminar el descubrimiento de prueba, el 8 de diciembre de 2025, los Apelantes presentaron su *Moción Solicitando Sentencia Sumaria, Declaración de Temeridad y Oposición a Moción de Sentencia Sumaria.*[4] El matrimonio Carvajal-Díaz sostuvo que Luma y AEE abandonaron la servidumbre en controversia desde el 2003, cuando se relocalizaron las líneas de distribución. Por lo cual, al amparo del artículo 964 del Código Civil de Puerto Rico, 31 LPRA sec. 8561, corresponde determinar la extinción de la servidumbre y ordenar su cancelación. Arguyó que, el derecho de uso de las compañías de telecomunicaciones cesó, toda vez que estas dependen de la existencia del derecho de Luma sobre la servidumbre. Por último, solicitó la imposición de honorarios y temeridad por una suma no menor de $73,000.00.

El mismo día, Luma instó su *Solicitud de Sentencia Sumaria* en la cual arguyó que, el hecho de haber establecido unas líneas de energía eléctrica en otro lugar no hacen inexistente la servidumbre constituida a perpetuidad.[5] Detalló la existencia de una línea neutral que transcurre por dicha infraestructura. Además, que los postes eléctricos mantienen el uso por parte de las compañías de telecomunicaciones. Finalmente, solicitó la imposición de

---

[4] *Íd.*, Entrada Núm. 124. Cabe destacar que, el 4 de mayo de 2023, LUMA presentó su *Contestación a la Demanda y Solicitud de Sentencia Sumaria.* Sin embargo, el 22 de mayo de 2023, el TPI denegó su petitorio. Véase, SUMAC TPI, Entrada Núm. 14 y 18.

[5] *Íd.*, Entrada Núm. 125.

honorarios de abogado, más las costas conforme a las reglas aplicables.

Seguidamente, el 18 de diciembre de 2025, Luma radicó su *Moción en Oposición a Solicitud de Sentencia Sumaria* en la cual reiteró que, al ser una servidumbre constituida a perpetuidad, no requiere el uso de la misma para establecer su existencia.[6] Explicó que el propósito del cable neutral es para marcar dónde ubica la servidumbre. Por otro lado, indicó que, en miras de mejorar el sistema eléctrico en la isla, resulta necesario mantener un récord de las rutas y servidumbres actuales por situaciones de emergencia en otros proyectos. Sostuvo que el Código Civil de Puerto Rico establece que el 'no uso' en las servidumbres discontinuas comienza desde el día que deja de utilizarse y en las continuas desde el día que ocurre un acto contrario a la servidumbre. Concluyó que en este caso no hubo un abandono de la servidumbre, toda vez que no ha cesado su uso y tampoco se realizó un acto en contra.

Sobre la imposición de honorarios por temeridad, Luma arguyó que las imputaciones realizadas por los Apelantes son amplias y no demostraron cómo estas prolongaron el proceso innecesariamente. En la alternativa, sostuvo que nuestro ordenamiento jurídico exige que la imposición de la suma sea equivalente a la conducta temeraria, que no necesariamente es igual a lo pagado.

Por su parte, el 23 de diciembre de 2025, el matrimonio Carvajal-Díaz presentó su *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria.*[7] Afirmó que, de las deposiciones de los funcionarios de Luma, no surge un plan futuro para la servidumbre en controversia. Además, testificaron que el cable neutral no tiene uso o función alguna debido a que no está conectado al sistema

---

[6] *Íd.*, Entrada Núm. 130.
[7] *Íd.*, Entrada Núm. 132.

eléctrico. Incluso, este tampoco forma parte del sistema de transmisión y distribución eléctrica actual de Torrimar. Reiteró que Luma no demostró la intención de un uso futuro para las líneas de energía.

Así las cosas, el 8 de enero de 2026, Luma instó una *Dúplica a "Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria"*, en la que insistió que no se debe considerar el abandono de una servidumbre a base de que no se han realizado labores en un periodo establecido.[8] Enfatizó que, el propósito de constituir la servidumbre a perpetuidad era garantizar el acceso, la capacidad de servicio y el mantenimiento cuando fuere necesario. Indicó que las estructuras existentes son utilizadas por compañías de telecomunicaciones, lo cual sustenta el uso continuo de la servidumbre.

Posteriormente, el 24 de febrero de 2026, el TPI celebró una vista argumentativa con relación a las mociones dispositivas.[9] Luego de examinar los escritos presentados por las partes, el 1 de abril de 2026, el foro primario emitió una *Sentencia* en donde declaró Ha Lugar la *Solicitud de Sentencia Sumaria* radicada por Luma.[10] Concluyó que el factor de que no discurre electricidad por la infraestructura no equivale al abandono de una servidumbre de un servicio público constituida a perpetuidad. Por otro lado, determinó que los Apelantes no demostraron el transcurso de 15 años desde que se hubiera realizado un acto contrario a la servidumbre. A esos efectos, hizo constar que el matrimonio Carvajal-Díaz adquirió la propiedad en 2021, con pleno conocimiento de que la propiedad contaba con un gravamen inscrito a perpetuidad.

Inconforme, los Apelantes presentaron el recurso que nos ocupa y plantearon la comisión de los siguientes errores:[11]

---

[8] *Íd.*, Entrada Núm. 134.
[9] *Íd.*, Entrada Núm. 136.
[10] *Íd.*, Entrada Núm. 137.
[11] SUMAC TA, Entrada Núm.1.

**PRIMER ERROR - Haciendo referencia al inciso (a) del Artículo 964 del Código Civil, erró el Tribunal de Primera Instancia al concluir que no ha transcurrido el plazo de quince (15) años desde que se realiza un "acto contrario" a la servidumbre, concluyendo que dicho plazo no se ha cumplido.**

**SEGUNDO ERROR - Haciendo referencia al inciso (h) del Artículo 964 del Código Civil, erró el Tribunal de Primera Instancia al concluir que aun cuando quedó probado que por la servidumbre no discurre electricidad por la línea eléctrica, que ello no implica el abandono de una servidumbre a perpetuidad de un servicio público, menos que se haya desvanecido su utilidad por el hecho de que no esté energizada al momento.**

**TERCER ERROR Erró el Tribunal de Primera Instancia al no declarar a Luma temeraria y dejar de imponer los honorarios solicitados.**

Por su parte, el 11 de mayo de 2025, Luma presentó su *Alegato en Oposición.*[12] Del mismo modo, Claro presentó su *Moción en Oposición a Recurso de Apelación.*[13]

Contando con el expediente ante nos, al igual que el beneficio de la comparecencia de ambas partes, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Service*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el

---

[12] *Íd.*, Entrada Núm. 3.
[13] *Íd.*, Entrada Núm. 4.

tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994). Asimismo, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. Regla 36.3(e) dispone que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

De modo que, la sentencia sumaria resulta adecuada en los casos donde no existen controversias de los hechos esenciales que hagan necesaria la celebración de un juicio. *Batista v. Sucn. Batista et al.,* 2025 TSPR 93, 216 DPR __ (2025). A esos efectos, solo resta aplicar el derecho a los hechos no controvertidos. *Íd.*

De otra parte, en *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, R. 36, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Asimismo, deberá examinar el expediente de la manera más

favorable hacia la parte que se opuso a la petición de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra. Íd.*

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

**B.**

El Código Civil define la servidumbre como "el derecho real limitado que recae sobre una finca, denominada finca sirviente, en beneficio de otra finca o de una o varias personas o comunidad individualizadas. Si la relación es entre fincas, la que recibe la utilidad se llama finca dominante.". 31 LPRA sec. 8501. Igualmente, se puede definir como "un derecho subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno". *Ciudad Real v. Mun. Vega Baja,* 161 DPR 160, 171 (2004). Existen 2 tipos de servidumbres, las voluntarias o las forzosas. 31 LPRA sec. 8504. Las

primeras se caracterizan por la voluntad de las partes mientras que las segundas tienen su origen en virtud de una ley. *Ciudad Real v. Mun. Vega Baja, supra,* pág. 172. A esos fines, "el dueño del predio destinado a sufrirlas no puede impedir su nacimiento". *Íd.*

Las servidumbres pueden ser continuas o discontinuas. Entendiéndose que, "[e]s continua aquella cuyo uso es o puede ser incesante sin la intervención humana; es discontinua la que se usa a intervalos más o menos largos y depende de actos humanos.". 31 LPRA sec. 8503. Así las cosas, una servidumbre se puede extinguir:

> (a) por el no uso durante quince (15) años, excepto en el caso de la servidumbre sobre finca propia. Este plazo empieza a contar desde el día en el que deja de usarse la servidumbre respecto a las discontinuas, y desde el día en el que tiene lugar un acto contrario a la servidumbre respecto a las continuas;
> (b) por el cumplimiento del plazo o de la condición;
> (c) por la extinción del derecho del concedente o del derecho real del titular de la servidumbre;
> (d) por la renuncia a la servidumbre por el titular dominante;
> (e) por la redención convenida entre el titular dominante y el sirviente;
> (f) por la pérdida total de la finca sirviente o de la dominante;
> (g) por la falta de declaración expresa de la existencia de servidumbre publicada únicamente por signo aparente sobre finca propia, en el título de enajenación;
> (h) por la desaparición de toda utilidad del uso de la servidumbre o si este uso resulta imposible. La servidumbre no se restablece si posteriormente su ejercicio vuelve a ser útil o posible; o
> (i) por la expropiación forzosa de la finca sirviente. Las servidumbres personales se extinguen por la muerte, aunque no se haya cumplido el plazo o condición pactados, si el titular dominante es persona natural. Si no se pacta duración, la servidumbre se extingue con la extinción de la persona jurídica que sea la titular dominante. 31 LPRA sec. 8561.

(Énfasis suplido).

## C.

Cónsono con lo anterior, la Regla 44.1(d) de Procedimiento Civil de Puerto Rico, *supra,* regula lo relacionado a los honorarios de abogados por temeridad. En lo pertinente, esta norma establece:

> (d) *Honorarios de abogado.* En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle

en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

La temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010). Es decir, cuando una parte perdidosa " 'por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito' ". *Asoc. Salud Primaria y otros v. ELA,* 2025 TSPR 75, 216 DPR __ (2025) (*citando a SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 149 (2022)). También se manifiesta cuando la actitud de la parte afecta el buen funcionamiento, al igual que la administración de la justicia, sujetando al litigante inocente a una ordalía judicial innecesaria. *Asoc. Salud Primaria y otros v. ELA, supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

Por ende, esta imposición de honorarios tiene el propósito de disuadir la litigación frívola y fomentar mediante transacciones la compensación a la parte victoriosa del pleito por los daños económicos y molestias causados por la temeridad de la otra parte. *Fernández v. San Juan Cement Co., Inc., supra*, págs. 721-722; *Marrero Rosado v. Marrero Rosado, supra*, pág. 505. Una vez el foro sentenciador concluye que una parte ha actuado de manera temeraria, es imperativa la imposición de honorarios de abogado. *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005). Esta determinación

descansa en la sana discreción del tribunal, y, por ende, los foros revisores solo intervendrán cuando de tal actuación surja un claro abuso de discreción. *Martínez Maldonado v. CONSERVE,* 2024 TSPR 125, 215 DPR __ (2024).

### III.

Según revela el tracto procesal, la Sentencia cuya revocación se solicita fue dictada al amparo de la Regla 36 de Procedimiento Civil, *supra.* Por tanto, de conformidad con lo resuelto por nuestro Tribunal Supremo en el caso de *Roldán Flores v. M. Cuebas et al., supra*, nos compete determinar, de manera inicial, si las partes cumplieron con los requisitos necesarios que dimanan de la regla procesal antes mencionada, de modo que podamos entonces considerar las mociones presentadas.

En el presente caso, la *Moción Solicitando Sentencia Sumaria, Declaración de Temeridad y Oposición a Sentencia Sumaria,* presentada por el matrimonio Carvajal-Díaz cumplió con los requisitos de forma del inciso (a) de la Regla 36.3 de Procedimiento Civil, *supra*, pues incorporó una exposición breve de las alegaciones de las partes; que no existían asuntos en controversia; la reclamación respecto a la cual fue solicitada la sentencia sumaria; una relación concisa, organizada y en párrafos enumerados de los hechos materiales sobre los cuales no había controversia sustancial, con indicación de la prueba documental; sus fundamentos en el derecho aplicable; y el remedio que debería ser concedido. Además, su solicitud estuvo acompañada de varias deposiciones de los funcionarios de Luma, el plano de la propiedad, varias fotografías de la residencia, entre otros documentos.

Por otro lado, el Apelado también presentó una *Solicitud de Sentencia Sumaria,* en la cual incluyó un breve recuento de las alegaciones, los hechos de los cuales no existe controversia y el

remedio solicitado.[14] Ahora bien, notamos que su petitorio se fundamentó en la evidencia presentada en su *Contestación a la Demanda y Solicitud de Sentencia Sumaria*[15] y otros documentos que obran en el expediente. Del mismo modo, hacemos constar que Luma presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria*, en la cual negó las conclusiones realizadas en varios hechos propuestos como incontrovertidos.[16]

Como resultado de nuestro análisis, concluimos que ambas partes cumplieron sustancialmente con las formalidades requeridas por la aludida Regla. Ahora bien, debemos resaltar que, en la vista argumentativa celebrada el 24 de febrero de 2026, las partes expresaron que no existían hechos materiales en controversia. Por lo tanto, nos encontramos en posición de atender el aspecto sustantivo.

En el caso ante nuestra consideración, los Apelantes nos solicitaron la revocación de la *Sentencia* emitida por el TPI, a través de la cual se declaró Ha Lugar a la *Solicitud de Sentencia Sumaria* presentada por Luma. En síntesis, el matrimonio Carvajal-Díaz arguyó que el foro primario erró al: (1) concluir que no ha transcurrido el plazo de 15 años desde que se realizó un acto contrario a la servidumbre; (2) al concluir que la servidumbre mantiene su uso, aun cuando se probó que no discurre electricidad por la línea eléctrica; y (3) al no declarar a Luma temeraria y, por consiguiente, no imponer los honorarios solicitados.

Los Apelantes argumentan que el acto obstativo en este caso ocurrió en 2003, cuando la AEE decidió constituir otra servidumbre para relocalizar las líneas eléctricas que discurrían por la servidumbre en controversia. Además, mencionaron que, de la

---

[14] SUMAC TPI, Entrada Núm. 125.
[15] *Íd.*, Entrada Núm. 14.
[16] Íd., Entrada Núm. 130.

evidencia presentada, surge que en los planos actuales de Luma se omite la existencia de la servidumbre previa. Por lo cual señalaron que en los propios récords de Luma no existen datos o información sobre la servidumbre en cuestión.

En la alternativa, los Apelantes arguyen que la servidumbre no tiene un uso presente. Indicaron que la única parte que ostenta un derecho real en la servidumbre es Luma. A tenor, si Luma pierde este derecho, las compañías de telecomunicaciones pierden su facultad para beneficiarse de la misma. Agregaron que los testimonios de los funcionarios de Luma demostraron que la servidumbre no tiene función eléctrica alguna. Incluso, se desprendió de uno de los testimonios que, el uso del cable neutral es solo para marcar la ubicación de la servidumbre sin la necesidad de acudir a un plano.

Mientras, Luma argumenta que, en vista de que la servidumbre es una de carácter continua, los Apelantes no demostraron el acto contrario al uso de la infraestructura. Explicó que el acto contrario debe ser un hecho que obstaculice por completo el ejercicio de la servidumbre. Por lo cual, señaló que la construcción de una nueva infraestructura no constituye un acto que impida el ejercicio de la servidumbre original. Por el contrario, el Apelado insistió en que la servidumbre se encuentra activamente en uso, toda vez que es utilizada por distintas compañías de telecomunicaciones. Planteó que el hecho de que no discurra electricidad por la infraestructura no significa que la misma haya perdido toda su utilidad.

Conforme a la exposición de derecho que antecede, una servidumbre se define como "el derecho real limitado que recae sobre una finca, denominada finca sirviente, en beneficio de otra finca o de una o varias personas o comunidad individualizadas. Si la relación es entre fincas, la que recibe la utilidad se llama finca

dominante.". 31 LPRA sec. 8501. En lo pertinente, una servidumbre legal tiene su origen por virtud de una ley. *Ciudad Real v. Mun. Vega Baja, supra,* pág. 172. A esos fines, "el dueño del predio destinado a sufrirlas no puede impedir su nacimiento". *Íd.* Así las cosas, una servidumbre se puede extinguir:

> (a) por el no uso durante quince (15) años, excepto en el caso de la servidumbre sobre finca propia. Este plazo empieza a contar desde el día en el que deja de usarse la servidumbre respecto a las discontinuas, y desde el día en el que tiene lugar un acto contrario a la servidumbre respecto a las continuas;
>
> [...]
>
> (h) por la desaparición de toda utilidad del uso de la servidumbre o si este uso resulta imposible. La servidumbre no se restablece si posteriormente su ejercicio vuelve a ser útil o posible; 31 LPRA sec. 8561.

Por estar íntimamente relacionados, discutiremos los primeros dos señalamientos de error de manera conjunta. En el primer análisis, venimos obligados a determinar si ocurrió un acto obstativo que impidiera el uso de la servidumbre por un término de 15 años. En el segundo análisis debemos examinar la desaparición de toda utilidad del uso de la servidumbre o si resulta imposible utilizarla.

Según adelantáramos, los Apelantes plantean que la reubicación de las líneas eléctricas constituyó el acto obstativo que provocó el abandono de la servidumbre por más de 20 años. Por otro lado, los Apelantes argumentaron que el uso de las líneas por las compañías de telecomunicaciones depende de la validez o la existencia del derecho real que cobija a Luma. De modo que, al cesar la utilidad del Apelado, debe cesar igualmente el uso de estas compañías.

Ahora bien, del expediente surge con meridiana claridad que la servidumbre aún mantiene su función en la actualidad, en vista del uso que ejercen compañías como Liberty PR o Claro. Específicamente, el señor Santiago Colón, Gerente de Minería y

Producción, informó que en la infraestructura discurre un cable neutral y "unos cables que aparentan ser de comunicaciones".[17] Además, el señor Santiago Colón informó que el cable neutral "marca lo que es la servidumbre actual".[18] Inclusive, el señor Maldonado Pérez, Supervisor del área de catastro, explicó que:

> esa es la razón por la cual están constituidas a perpetuidad [...] la servidumbre son assets o digamos activos de la Autoridad de Energía Eléctrica, no de Luma, pues la servidumbre que pues yo certifico que está viva en el registro de la propiedad, pues tiene que quedarse allí, pues porque el uso de la servidumbre puede ser en cualquier momento utilizada para junt[ar] a las líneas que estén allí, en cualquiera de estos solares, poner otros aditamentos, poderle dar servicio, mantenimiento, porque esa es la razón de la servidumbre.[19]

Asimismo, los funcionarios de Luma fueron enfáticos al sostener la validez y la necesidad de mantener esta servidumbre para el uso futuro de la infraestructura. También se demostró que, en miras de mejorar la estructura del sistema eléctrico, es necesario mantener el acceso o la garantía de estas servidumbres.[20]

Es forzoso concluir que, a pesar de que la infraestructura no tiene una función eléctrica sustancial, el uso de la servidumbre es persistente toda vez que se utiliza para las líneas de telecomunicaciones. Nótese que la disposición legal no requiere un grado particular de utilidad. Más bien se requiere que desaparezca la *totalidad* del uso o que este se haya tornado imposible. De la prueba presentada no se evidencia ninguno de los dos escenarios antes mencionados, pues la servidumbre también tiene potencial de ser utilizada en un futuro. En síntesis, el TPI actuó correctamente al determinar que no procede la extinción de la servidumbre en vista

---

[17] Sumac TPI, Entrada Núm. 124 – Anejo Transcripción de Deposición Santiago Colón, pág. 25, líneas 1-7.

[18] *Íd.*, Anejo – Transcripción de Deposición Santiago Colón, pág. 26, líneas 8-10.

[19] *Íd.*, Anejo – Transcipción de Deposición de Maldonado Pérez, pág. 8, líneas 16-23.

[20] *Íd.*, Anejo – Transcipción de Deposición Rodríguez Lasanta, pág. 9; Anejo – Transcripción de Deposición de Maldonado Pérez, pág. 8; Anejo – Transcripción de Deposición – Prado Rivera, pág. 5.

de que es una de uso público, la cual mantiene la utilidad presente y futura. Por lo que, resolvemos que el foro primario no cometió los planteamientos de error uno y dos.

En su último señalamiento de error, los Apelantes sostienen que el foro primario erró al no declarar a Luma temeraria, y por consiguiente, no imponer los honorarios según fuera solicitado.

La temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado, supra.* Es decir, cuando una parte perdidosa " 'por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito' ". *Asoc. Salud Primaria y otros v. ELA, supra.* El Tribunal Supremo de Puerto Rico ha reiterado, uniformemente, que no procede la imposición de honorarios por temeridad cuando la litigación se limita a defender derechos legítimos, o cuando existe controversia bona fide sobre el derecho aplicable. *P.R. Oil v. Dayco, supra.*

El matrimonio Carvajal-Díaz argumenta que, de una lectura de las deposiciones de los funcionarios, surge que Luma tuvo conocimiento en cuanto a que la servidumbre alegadamente fue abandonada desde un principio. Por lo cual, los Apelantes concluyeron que Luma fue contumaz, terca y obstinada a través de todo el proceso y debe ser sancionada para que pague por los daños que le ocasionaron estos por dicha actuación.

Evaluada la conducta de Luma, a la luz de lo resuelto anteriormente, no corresponde la imposición de honorarios por temeridad. En vista de lo anteriormente discutido, Luma no resultó ser la parte perdidosa en el pleito que nos ocupa. A esos fines,

debemos recordar que el Apelado tenía la obligación de defenderse de las alegaciones del matrimonio Carvajal-Díaz, ante el hecho de que era el titular de un derecho real debidamente constituido. Del expediente ante nos, no se desprende la terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, que justifique la imposición de honorarios por temeridad. Por lo cual, el TPI no cometió el tercer señalamiento de error.

**IV.**

Por los fundamentos que preceden, se confirma el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones